IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Paul M. GOETZ, Attorney at Law.†

Supreme Court

*No. 96–1438–D. Submitted on briefs October 9,
1997.—Decided November 7, 1997.*

(Also reported in 570 N.W.2d 726.)

For Paul M. Goetz there were briefs by *Paul M.
Goetz*, Wausau.

†Motion for reconsideration denied December 17, 1997.

For the Board of Attorneys Professional Responsibility there was a brief by *Paul W. Schwarzenbart*, Madison.

¶ 1. PER CURIAM. Attorney Paul M. Goetz appealed from the referee's conclusions that he engaged in professional misconduct and from the recommendation that the court publicly reprimand him for that misconduct. The misconduct concerned Attorney Goetz's having used a fictitious name in signing a letter he submitted to a newspaper for publication criticizing a district attorney, acting in the presence of a conflict of interest when, after being elected and taking office as district attorney, he advised the county corporation counsel on a request his predecessor had made to the sheriff for the release of the investigative file concerning the letter to the newspaper and its authorship, and refusing to answer questions in the investigation of his conduct concerning his role in authoring, publishing or mailing other letters derogatory of the district attorney.

¶ 2. We determine that the referee properly concluded that Attorney Goetz engaged in professional misconduct by his actions in these matters. We also determine that the nature and seriousness of that misconduct warrant imposition of the public reprimand recommended by the referee. Attorney Goetz's misrepresentation of his identity in order to have his views concerning a public official published in a newspaper and his subsequent use of his public office to deter inquiry into that misrepresentation constitute serious breaches of his professional obligations as a person licensed to represent others and as an officer of the justice system. He also breached his obligation to coop-

495

erate in the investigation by those this court has authorized to investigate and, when deemed appropriate, prosecute allegations of attorney misconduct.

¶ 3. Attorney Goetz was admitted to practice law in Wisconsin in 1973 and practices in Wausau. He was elected and served as Lincoln county district attorney from 1993 to 1995. He has been disciplined once previously: he consented to a private reprimand from the Board of Attorneys Professional Responsibility (Board) in March, 1993 for failing to prepare for an administrative hearing on his client's equal rights claim and failing to give the client notice until the day of the hearing of his intention not to represent him at that hearing, thereby depriving the client of the opportunity to employ other counsel.

¶ 4. The referee in this proceeding, Attorney John E. Shannon Jr., made findings based on facts to which the parties stipulated prior to the disciplinary hearing and on the evidence presented at that hearing. In his answer to the Board's complaint, Attorney Goetz admitted that he wrote a letter to the editor of the *Wausau Daily Herald* dated December 9, 1991 under the assumed name of Marie Conley, purporting to reside in Merrill, Wisconsin, with the intention of concealing his identity as the author of that letter when submitting it for publication. In that letter, he expressed displeasure with the majority of politicians and attacked specifically the district attorney for Lincoln county, Kenneth Johnson, suggesting that he had contempt for the law and thought himself above the law. The letter referred to a public reprimand this court had imposed on District Attorney Johnson in 1991. The referee concluded that by writing and submitting that letter to the newspaper for publication under a false name, Attorney Goetz engaged in conduct

involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[1]

¶ 5. In late spring or early summer of 1992, Attorney Goetz ran against District Attorney Johnson and was elected in November of that year. During the campaign, District Attorney Johnson received the following three letters. The first, received in July, was a copy of the December 9, 1991 letter published in the newspaper, on which was typed language, including an offensive epithet, attacking District Attorney Johnson's honesty, integrity and "mental status." It listed seven names as signatories, including "Marie" and "Others too numerous to mention."

¶ 6. The second letter, which was received in August, made reference to a court case in which District Attorney Johnson had appeared. It stated that opposing counsel in that case pointed out how District Attorney Johnson was misrepresenting facts. The letter referred to the district attorney as a "sociopath" and was signed "Marie Conley." The third letter, replete with offensive epithets, was received in September. It alleged that District Attorney Johnson attempted to discredit the clerk of courts by investigating that office's retention of a portion of passport fees. This letter, too, made reference to the district attorney's public reprimand and was signed "Peter Robinski."

¶ 7. After receiving the second letter, District Attorney Johnson asked the sheriff's department to investigate whether it and the July letter violated state

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

law. He subsequently amended his complaint to the sheriff to include the third letter. The sheriff's officer conducting the investigation suspected that Attorney Goetz had written the three letters and sent them to the Federal Bureau of Investigation for analysis, together with exemplars of typewritten documents that had been signed by Attorney Goetz on his office ` letterhead stationery. The FBI determined that the letters and the exemplars originated from the same typewriting source.

¶ 8.  The officer sent his report of the investigation to the sheriff September 1, 1993, and the sheriff then asked the Wisconsin Department of Justice to investigate the district attorney's complaint. Three months later the Department of Justice responded that it saw nothing further that needed to be done from an investigative standpoint and that it would not consider forwarding the matter to a prosecutor. The sheriff informed his officer of that response and suggested the file be closed.

¶ 9.  In March, 1994, Attorney Johnson made two public record requests to the sheriff for copies of documents in his department file concerning the investigation of the complaint he had made about the three letters. The sheriff did not respond to those requests for approximately four weeks. He did, however, tell District Attorney Goetz of the public records requests and showed him a copy of the officer's investigative report, a copy of the letter forwarding the file to the Department of Justice, and a copy of that department's response. At the same time, the sheriff told District Attorney Goetz of the typewriter comparison linking the typewriter in his law office to the three letters.

¶ 10.  In response to that information, District Attorney Goetz told the sheriff it was his opinion the letters did not amount to criminal conduct and that the public records request should be denied. On April 4, 1994, the sheriff asked the county corporation counsel for a legal opinion on the status of the records Attorney Johnson had requested. The corporation counsel responded that as of April 7, 1994, the investigator and those who had conducted the administrative review of the investigation considered it a closed file.

¶ 11.  On April 25, 1994, the corporation counsel told District Attorney Goetz that the *Wausau Daily Herald* had made public records requests for correspondence between former District Attorney Johnson and the sheriff's department between January 1, 1993 and April 18, 1994, during which time Attorney Johnson had requested the investigative files. Corporation counsel asked District Attorney Goetz to advise her if he claimed any legal reason to deny the release of that correspondence to the newspaper, adding that if she heard nothing from him by midday, April 26, 1994, she would instruct the sheriff's department to release the material.

¶ 12.  District Attorney Goetz wrote the corporation counsel that the requested records were part of an open file in his office, adding that up to that point no one had been charged with a crime but that the letters sought by the newspaper related to an open file in which he might decide to file charges against a former Lincoln county official for misconduct in office. District Attorney Goetz also stated that unless and until charges were filed, there would be no release of information from his office and asserted that if it was not appropriate for him as a prosecutor to release information on the file to the press, "[I]t clearly is not

appropriate for you to direct the sheriff to release information to the press." The referee concluded that Attorney Goetz violated SCR 20:1.7(b)[2] by attempting to persuade the corporation counsel to advise the sheriff not to release records Attorney Johnson and the newspaper had requested when he knew he was the object of the investigation to which those records related.

¶ 13. After Attorney Johnson filed a grievance with the Board concerning Attorney Goetz's conduct in respect to the first "Conley" letter and the three subsequent campaign letters and concerning his conduct as district attorney regarding the public records requests made to the sheriff's department, the Board referred the matter to the district professional responsibility committee for investigation. That committee asked Attorney Goetz whether he was responsible for authoring, publishing or mailing the campaign letters and whether he thought they were offensive. Attorney Goetz responded, "That is not something I would do. . .I find your questions offensive." Thereupon, Attorney Goetz stopped answering questions and insisted that the committee review the "legal authority" he had cited and furnish him with any authority the committee

---

[2] SCR 20:1.7 provides, in pertinent part:

**Conflict of interest: general rule**

. . .

(b)   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1)   the lawyer reasonably believes the representation will not be adversely affected; and

(2)   the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

found in support of the Board's authority to ask questions about the campaign letters. The referee concluded that Attorney Goetz's refusal to answer the committee's questions concerning whether he had any role in authoring, publishing or mailing the campaign letters constituted a refusal to cooperate in the Board's investigation, in violation of SCR 21.03(4)[3] and 22.07(3).[4]

¶ 14. After the investigative meeting ended, Attorney Goetz was notified of the date of a second investigative meeting before the committee. Attorney Goetz did not appear at that meeting, for the stated reason that he had scheduled three court hearings during that morning and was unable to have them rescheduled. The referee found that it was reasonable for Attorney Goetz to assume that the second meeting would begin in the afternoon, as the first had done, and, consequently, his nonattendance at the morning meeting did not constitute a refusal to cooperate in the Board's investigation.

---

[3] SCR 21.03 provides, in pertinent part:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[4] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

¶ 15.   In this appeal, Attorney Goetz argued that the referee improperly concluded that he had engaged in misconduct by using a fictitious name on the December, 1991 letter he submitted to the newspaper for publication for the reason that the letter constituted "core political speech" criticizing a public officer and as such enjoyed constitutional protection. Further, he contended, that protection extended to his use of the false name as the author of that content, as the name was "inextricably intertwined" with the letter's political content. Attorney Goetz had made that argument during the course of the disciplinary proceeding, and the referee correctly rejected it, as well as Attorney Goetz's insistence that his use of the false name was nothing more than his attempt to remain anonymous in criticizing a public official. In this appeal, the Board noted that Attorney Goetz elected not to use a non-deceptive means of concealing his identity, for example, using an obviously fabricated name, "Anonymous," or his own name but asking that it not be published. As he testified at the disciplinary hearing, Attorney Goetz was concerned that the newspaper might not publish the letter if it were signed "Anonymous" or with an obviously fabricated name and, further, that it might not protect his identity had he given it.

¶ 16.   As the referee determined, it was not Attorney Goetz's criticism of the district attorney in that letter that is the issue; it is the deceptive means he employed to have that criticism published by a reputable newspaper and communicated to its readership. Attorney Goetz misrepresented his identity as a lawyer attacking the professional integrity of the chief law enforcement official of the county, thereby reflecting adversely on Attorney Goetz's professional position.

¶ 17. Attorney Goetz also argued that the rule the referee concluded he had violated, SCR 20:8.4(c), is not applicable to that conduct, as there is a more specific rule that he contended applies exclusively. That rule, SCR 20:8.2, prohibits a lawyer from making a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office. That argument has no merit for the reason already given: the misrepresentation did not concern the statements made in the letter about the district attorney; it was the falsification of the letter writer's identity in order to have those statements published.

¶ 18. On the issue of whether the referee properly concluded that he acted in the presence of a conflict of interest when advising the corporation counsel concerning the release of the sheriff's department records of an investigation of which he was the object, Attorney Goetz contended that he did not have a "client" when corporation counsel sought his advice in the matter and thus could not have violated the specified rule. He also argued that a waiver by the corporation counsel of any conflict may be inferred from the facts that he had referred the sheriff to corporation counsel, assertedly because there would be an appearance of a conflict of interest as a result of the involvement of his office in the matter, the sheriff went to the corporation counsel for advice, and corporation counsel thereafter sought his advice in the matter.

¶ 19. Regardless whether the county was a "client" in the usual meaning of the word when applied to a lawyer's representation, there is no question that District Attorney Goetz was being asked in his official

capacity the status of a file in his office by another legal representative of the county. Rather than turning the request over to someone else in his office, he took the official position that the file in his office remained open, saying that he might decide to prosecute his predecessor for having asked the sheriff to investigate what he considered a non-criminal matter, and actively advocated that the public records requests be denied.

¶ 20.   We find no merit to the waiver argument, as the corporation counsel's request for advice was with respect to whether there was reason to advise the sheriff not to release the information because there was an open file in the district attorney's office that was connected to it. Moreover, there is no indication that the corporation counsel was aware that the subject of the investigation about which the records had been requested was the very person who was advising her not only in respect to the open status of a file in his office but also on whether it was appropriate that she advise the sheriff to release the records. Likewise meritless is Attorney Goetz's contention that any personal interest he might have had in the matter was "merely coincidental" to what he termed his pursuit of a long-standing policy in the district attorney's office not to honor a public records request for closed investigative files when no one was charged or likely to be charged.

¶ 21.   In respect to his refusal to answer questions from the investigative committee concerning his involvement in the three campaign letters, Attorney Goetz argued that the Board's allegation that he failed to cooperate in the investigation must fail because the referee found that one of the two acts on which that allegation was premised, namely, his failure to attend the second investigative meeting, did not constitute a failure to cooperate in the investigation. He also con-

tended that the three campaign letters constituted "core political speech" implicating First Amendment rights and that he was constitutionally entitled to refuse to answer the questions concerning them. Neither of these arguments has merit. The FBI report linking those letters to a typewriter in Attorney Goetz's office gave the district committee cause to believe Attorney Goetz might have had some involvement in or knowledge of their creation, and it was reasonable that the committee ask him what he knew about the letters.

¶ 22.   We adopt the referee's findings of fact and conclusions of law concerning Attorney Goetz's misconduct in these matters. On the issue of discipline to be imposed, the Board took the position that the public reprimand recommended by the referee is appropriate in view of the multiple acts of misconduct established in this proceeding, Attorney Goetz's refusal to acknowledge any wrongdoing, and the private reprimand imposed on him, with his consent, for misconduct that occurred just prior to his submission of the "Marie Conley" letter for publication. We agree.

¶ 23.   In addition to that public reprimand, the referee recommended that the court require Attorney Goetz to pay the costs of this disciplinary proceeding. Attorney Goetz filed an objection to the assessment of costs against him and renewed that objection following submission by the Board of the costs it incurred in this appeal. None of the grounds set forth in that objection has merit with the exception of the contention that a portion of the costs itemized by the Board already might have been taxed against Attorney Goetz in a proceeding he had unsuccessfully pursued in circuit court to enjoin this proceeding. Accordingly, we hold the matter of costs in abeyance pending resubmission by the Board of costs it incurred in this proceeding

prior to the filing of Attorney Goetz's appeal, deleting therefrom those costs clearly identifiable and traceable to time and expenses incurred in the injunction proceeding that were taxed against Attorney Goetz. Following that submission, Attorney Goetz will be afforded the opportunity to respond.

¶ 24. IT IS ORDERED that Attorney Paul M. Goetz is publicly reprimanded as discipline for professional misconduct.

¶ 25. IT IS FURTHER ORDERED that the assessment of costs of this proceeding shall be held in abeyance pending further order of the court.